UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MISC Berhard,** | ) | **CASE NO. 1:14 CV 1188** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Advanced Polymer Coatings, Inc. et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon the Motion to Dismiss of Donald Keehan, Doug Keehan, and Denise Keehan (Doc. 15).[1]  This case arises from the supply of a defective protective coating applied to plaintiff's ocean-going tankers.  For the reasons set forth below, defendants' motion is GRANTED.

### Facts

---

[1] The motion originally included David Keehan, APC's Vice President of Marketing and COO.  However, David Keehan was dismissed as a defendant pursuant to Rule 41(a)(1)(A)(i) after the instant motion was filed.  Consequently, he is no longer a party to the case.

Plaintiff, MISC Berhard ("MISC"), is a Malaysian corporation in the business of providing maritime transportation and logistics services. MISC owns and operates tankers, which transport oils, chemicals, and other liquid cargos around the world. MISC brings this action against Advanced Polymer Coatings, Inc. ("APC"), Donald Keehan, Doug Keehan, and Denise Keehan (collectively "the Keehan Defendants"). APC is an Ohio corporation that manufactures and installs high performance protective tank coatings. Donald Keehan is the Chairman of APC. Doug Keehan is APC's Vice President of Technical Services and Project Manager. Denise Keehan is a Vice President of APC.

The following facts are set forth in the Amended Complaint. In 2007, MISC engaged SLS Shipbuilding Co, Ltd. ("SLS") for the construction of several tankers, including the Bunga Bakawali ("Bakawali") and the Bunga Balsam ("Balsam"), which were to transport oils and liquid chemicals. MISC instructed SLS to use APC's product, MarineLine® 784, to coat the cargo tanks of the Bakawali and the Balsam.

SLS entered into a contract with APC on August 18, 2009 under which APC was to provide its coating for application to the Bakawali and the Balsam and provide supervision of the application of the coatings at SLS's shipyard. As part of the contract, APC provided SLS with insurance guarantees for the two tankers. The guarantees provided that APC "will reimburse the Customer for the cost of replacement MarineLine Coating materials and their application, as may be necessary to repair Defective Areas in accordance with this Guarantee." (Doc. 15 Ex. 1). [2] Denise Keehan signed the guarantees on behalf of APC. The Balsam guarantee was assigned to

---

[2] APC's guarantees for the Bakawali and the Balsam are found in Doc. 1 Exs. 1, 4 (Bakawali) and Doc. 1 Exs. 6, 7 (Balsam).

2

MISC by SLS in May 2010 and the Bakawali guarantee was assigned to MISC in March 2011.

In June 2010, just a few months after Bakawali had been completed, MISC discovered that the MarineLine® 784 coating on the cargo tanks of the Bakawali was peeling.  APC investigated the problem and confirmed that the tank coating had failed.  MISC insisted that the Bakawali be repaired immediately.  APC provided replacement coating material and technical support at no charge and the Bakawali was re-coated between September 27 and November 18, 2010.  MISC, suspecting that the same defect had occurred on the Balsam, requested APC to perform testing.  The testing showed that the MarineLine® 784 had failed on the Balsam as well.  In August 2011, Doug Keehan stated that APC intended to resolve the delamination issue quickly and to MISC's satisfaction.  The Balsam repairs were completed between September and November 2011, with APC again providing coating materials and technical support at no charge to MISC.  MISC paid for labor and shipyard services to re-coat the two tankers to the cost of more than $3.6 million.

MISC tried to recover the cost for these repairs from APC.  MISC alleges that throughout the repairs process and afterward, APC and the Keehan Defendants represented to it that its costs would be covered by the insurance guarantees.  In December 2013, MISC learned that APC had cancelled their insurance coverage without notice to MISC and that APC had never put the insurance company on notice of MISC's claims.

Plaintiff thereafter brought suit.  The Amended Complaint contains nine counts for relief.  The Keehan Defendants now move to dismiss Count Eight for fraudulent misrepresentation.  Plaintiff opposes the motion.

**Discussion**

3

The Keehan Defendants argue that Count Eight fails to meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9. Plaintiff fails to specify specific statements made by each of the Keehan Defendants. Those that are specified are not statements of fact that can underlie a fraud claim or plaintiff fails to identify the time and place the statements were made. But moreover, plaintiff fails to allege any injury caused by the fraudulent statements.

Plaintiff contends that its claim is sufficiently plead.

When pleading fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." It is well-settled in the Sixth Circuit that circumstances constituting fraud include "the time, place, and content of the alleged misrepresentation" as well as the identity of the individual making the representation. *United States v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir.2008) (internal quotations omitted); *Sogevalor, SA v. Penn Central Corp.,* 771 F.Supp. 890, 893 (S.D. Ohio 1991) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 (6th Cir. 1988)). The plaintiff must also allege "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ford Motor,* 532 F.3d at 504.

Where a plaintiff asserts a tort claim based on the same conduct that constitutes a breach of contract, the plaintiff must show fraud damages separate from those attributable to the breach of contract. *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.,* 212 F.3d 332, 338 (6th Cir. 2000) (holding that an award of damages "arising from the fraudulent inducement must be separate and distinct from the damages awarded [for breach of contract]."); *see also Kott v. Gleneagles Prof'l Builders & Remodelers, Inc.,* 2012 Ohio 287, (Ohio App. 6th Dist. 2012).

After review, the Court finds that plaintiff's fraudulent inducement must be dismissed. The crux of plaintiff's fraud claim against the Keehan Defendants is that it was led to believe that the amounts MISC paid to repair the Balsam and the Bakawali would be covered by the insurance guarantees.  (Am. Comp. ¶ 79).  Plaintiff alleges that the Keehan defendants represented that there was insurance coverage to back up APC's warranties in its contracts, but that APC never put its insurance company on notice of MISC's claim and that APC cancelled their insurance coverage.  (Am. Comp. ¶¶ 80-84).  Plaintiff asserts that it relied on these representations and delayed bringing suit.  However, plaintiff's claim against each of the Keehan Defendants fails because it does not sufficiently allege an injury.  The Amended Complaint states that plaintiff suffered $3.6 million in damage as a result of representations made by the Keehan defendants, but this $3.6 million is the sum of MISC's out-of-pocket expenses for repairing the Bakawali and the Balsam—the same amount of damage alleged in the breach of contract claim. *Compare* Am. Comp. ¶ 47, *with* Am. Comp. ¶ 93.  Plaintiff does not plead any facts that support an inference that the delay in bringing suit contributed in any way to this sum. Without a separate injury from its breach of contract claim, plaintiff's fraud claim cannot be maintained. *Medical Billing, Inc.,* 212 F.3d at 338.[3]

Aside from failing to plead any facts supporting a separate injury, plaintiff's claims against the Keehan Defendants fail on several other fronts.   The only statement in the Amended Complaint associated with Donald Keehan is that in August 2011, he stated that "it was APC's intention to resolve the matter to MISC's complete satisfaction and to do so as quickly as

---

[3]   Although plaintiff argues that the delay resulted in it potentially waiving certain claims against defendants, this allegation is not found in the Amended Complaint.

5

possible." (Am. Comp. ¶ 81). This paragraph fails to allege the place of the representation. Moreover, this is a statement about a future act, which generally a fraud claim cannot be predicated upon. *Tibbs v. Nat'l Homes Construction Corp.*, 52 Ohio App. 2d 281, 369 N. E. 2d 1218 (Ct. App. War. Cty. 1977).

Plaintiff fails to point to any representation made by Denise Keehan in the Amended Complaint. In its brief, plaintiff appears to contend that Denise Keehan's signature on the insurance guarantees is the basis of the fraud claim against her. However, Denise Keehan's signature on the insurance guarantees is not a "statement" upon which a fraud claim can be premised considering that plaintiff fails to allege that there was no insurance coverage in place when the contract was signed or the nature of the fraudulent scheme when the contract was signed.

Finally, plaintiff identifies only one misrepresentation by Donald Keehan, that on October 30, 2013, he "assured MISC that he would meet to discuss the issues related to the coating failures." (Am Comp. ¶ 83). Plaintiff again fails to identify where the statement was made. But moreover, elsewhere in the Amended Complaint it states that on December 9 and December 10, 2013, APC did meet with MISC and discussed the coating failures, albeit in an unsatisfactory way to MISC. (Am. Comp. ¶ 40, 85). Therefore, the statement does not rise to a misrepresentation.

Because of the deficiencies in the pleading, plaintiff's claim for fraudulent misrepresentation against Donald, Denise, and Doug Keehan must be dismissed.

**Conclusion**

For the reasons set forth above, defendants' motion is GRANTED. Count Eight is

dismissed against Donald Keehan, Denise Keehan, and Doug Keehan.

    IT IS SO ORDERED.


                                          /s/ Patricia A. Gaughan  
                                         PATRICIA A. GAUGHAN  
                                         United States District Judge

Dated: 10/8/14