UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MISC Berhad,** | ) | **CASE NO. 1:14 CV 1188** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Advanced Polymer Coatings, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 24). For the reasons set forth below, plaintiff's motion is DENIED.

### Facts

The facts are more fully set forth in the Court's opinion of October 8, 2014. Briefly, plaintiff, MISC Berhad ("MISC"), owns and operates tankers that transport liquid cargos around the world. Plaintiff originally brought suit against Advanced Polymer Coatings, Inc. ("APC"), Donald Keehan, Doug Keehan, and Denise Keehan (collectively "the Keehan Defendants"), alleging nine claims against defendants arising from their provision of a

1

defective protective coating on two of plaintiff's tankers, the Bakawali and the Balsam.

As part of their contract with MISC, APC provided MISC (sometimes through its shipbuilder SLS Shipbuilding Co. Ltd. ("SLS")) with insurance guarantees about the performance of the coating and warranted that, in the event of failure, the damages would be covered by insurance. The specific guarantees are:

> • An Insurance Guarantee dated February 1, 2010 reflecting a "Policy Number 02201000389" issued to SLS guaranteeing the tank coating system as applied to the BAKAWALI;
> • An Insurance Guarantee dated April 2, 2010 reflecting a "Policy Number 04201000393" issued to SLS guaranteeing the tank coating system as applied to the BALSAM;
> • An Insurance Guarantee dated May 13, 2010 reflecting a "Policy Number 052010T3T0109" issued to MISC guaranteeing the tank coating system as applied to the BALSAM; and
> • An Insurance Guarantee dated November 9, 2010 a "Policy Number 112010T3T0108" issued to MISC guaranteeing the tank coating system as applied to the BAKAWALI.

(Doc. 24-3 Exs. B, C, D, E).

Section 2.01 of each guarantee states that for a period of five years,

> "Insurance Company will reimburse the Customer for the cost of replacement MarineLine Coating materials and their application, as may be necessary to repair Defective Areas in accordance with this Guarantee, providing that such repairs are actually carried out and that Advanced Polymer Coatings, Ltd. entire liability under this Guarantee shall be limited to the initial costs which are Replacement of MarineLine coating material, Inspection, Staging/Surface Preparation, Application, and Heat Curing."

Each of the guarantees state that "Insurance Co. guarantees the performance during the guarantee period" of the tanker coating. The guarantees are signed by Denise Keehan on behalf of APC and there are spaces for a signature by an SLS or MISC representative that are unsigned. (Doc. 24-3 pp. 32, 39, 45, 49).

On October 8, 2014, this Court dismissed Count Eight of plaintiff's First Amended

2

Complaint, which was the only claim alleged against the Keehan Defendants.  Count Eight raised a claim for fraudulent misrepresentation based on statements that the Keehan Defendants made about there being insurance coverage to back up APC's warranties in its contracts.  After defects were discovered in the coating, defendants reassured MISC that there was insurance to back-up APC's contractual warranties. (First Am. Comp. ¶ 80).  In August 2010, Doug Keehan stated it was APC's intention to resolve the matter to MISC's satisfaction. (*Id*. ¶ 81).  In 2011, APC assured MISC that it stood behind the insurance guarantees. (*Id*. ¶ 82).  In December 2013, APC informed MISC that APC had cancelled their insurance coverage and that APC had never put any insurance company on notice of MISC's claims. (*Id*. ¶¶ 85-86).

The Court dismissed the claim because it failed to sufficiently allege an injury caused by the misrepresentations. (Doc. 22 p. 5).   Instead, the claim alleged plaintiff suffered damages in the amount of $3.6 million dollars.  As this was the amount of MISC's out-of-pocket expenses for repairing its tankers, and the same amount of damages alleged in the breach of contract claim, plaintiff had not pled a separate injury required to sustain its fraud claim.  The Court also found that dismissal was warranted because the allegations failed to meet the particularity requirements of Rule 9 for each of the Keehan Defendants. (*Id*. pp. 5-7).  The Keehen Defendants were thereafter dismissed from the case.

Plaintiff now moves for leave to amend the complaint to reallege a claim for fraudulent misrepresentation against the Keehan Defendants, arguing that certain facts supporting the claim came to light during discovery.  Defendant APC opposes the motion.

**Discussion**

3

A party may amend its pleadings with leave of court, and the court should freely give such leave when justice requires. Fed.R.Civ.P. 15(a)(2). Justice does not require leave to amend "if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed." *Johnson v. Ventra Gp., Inc*., No. 96-1463, 1997 U.S. App. LEXIS 21714, 1997 WL 468332 at \*7 (6th Cir. Aug. 13, 1997) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Leave to amend the complaint should also not be granted if the amendment would result in undue prejudice to the opposing party or if the amendment would be futile. *Id.*

Plaintiff argues that leave to amend should be granted because it learned additional information during Denise Keehan and Donald Keehan's depositions taken on September 29 and 30, 2014, which was previously unknown to MISC. Specifically, Denise Keehan admitted that there was never a third-party insurance company behind APC's insurance guarantees and that she knew this when she signed APC's guarantees. Likewise, Donald Keehan confirmed that there was never a third party insurance company. His deposition testimony also indicated that he and APC made false representations to MISC. For instance, APC had represented to MISC in December 2013 that the "Arizona Insurance" coverage for plaintiff's tanker coatings had been cancelled. At deposition, Donald Keehan admitted that APC had not used Arizona Insurance since the late 1990s.

Defendant opposes the motion. Defendant maintains that it is untimely and does not raise new allegations based on the deposition testimony. Rather, the depositions merely confirmed allegations made by MISC in the First Amended Complaint. But moreover, defendant argues that the claim fails because it again does not allege a sufficient injury.

4

Plaintiff is alleging it suffered damage from pursuing legal action to enforce the insurance guarantees. This is not a separate injury from its breach of contract claim. As such, defendant argues that plaintiff's claim fails as a matter of law.

After review, the Court finds that amendment would be futile and denies plaintiff's request to amend. In the Second Amended Complaint, plaintiff alleges:

> 123. MISC justifiably relied on the Defendants representations concerning the Insurance Guarantees and elected a course of action based on such reliance. Based on MISC's reliance on the Defendants misrepresentation, MISC retained legal counsel to pursue recovery under the Insurance Guarantees and spent in excess of $15,000 on legal fees and other expenses relating to pursuit of such claim. These funds would not have been spent, but for MISC's reasonable belief that the Insurance Guarantees were backed by a third-party insurance company.

(Doc. 24-3, Second Am. Comp.).

The insurance guarantees were part of plaintiff's contract with APC. Attempting to recast the allegation against the Keehan Defendants as fraud does not alter the fact that the crux of plaintiff's claim is that APC did not live up to its end of the bargain in the contract. It is from contractual duties that APC's obligation to provide insurance arose.

As the Court noted during its discussion of the fraudulent misrepresentation claim in the First Amended Complaint, "[w]here a plaintiff asserts a tort claim based on the same conduct that constitutes a breach of contract, the plaintiff must show fraud damages separate from those attributable to the breach of contract. *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.,* 212 F.3d 332, 338 (6th Cir. 2000) (holding that an award of damages "arising from the fraudulent inducement must be separate and distinct from the damages awarded [for breach of contract].").

Plaintiff's claim again fails because there are no independent damages. Plaintiff

5

presents no authority, and the Court's research has not yielded any, demonstrating that attorney's fees alone are sufficient to meet the injury element of a fraud claim.  Rather, Ohio follows the "American Rule" that "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefore." *Nottingdale Homeowners' Assn. v. Darby* (1987), 33 Ohio St.3d 32, 34, 514 N.E.2d 702 (citing *Fleishmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717 (1967)).  Absent an injury flowing from the fraudulent misrepresentations, plaintiff's claim fails as a matter of law and repleading the claim against the Keehan Defendants is futile. *Accord Chow v. Aegis Mortgage Corp.*, 185 F. Supp. 2d 914, 918 (N.D. Ill. 2002) (finding a fraud claim failed as a matter of Illinois law, which applies the American rule, where the only injury alleged was attorney's fees).

**Conclusion**

For the reasons set forth above, plaintiff's motion to amend is DENIED.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/24/14