**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MISC Berhad,** | ) | **CASE NO. 1:14 CV 1188** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Advanced Polymer Coatings, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 39). Also pending is Plaintiff MISC Berhad's Motion for Summary Judgment (Doc. 44). This dispute arises as a result of the application of a protective coating to ocean going tankers. For the reasons that follow, defendant's motion is GRANTED and plaintiff's motion is DENIED.

### FACTS

Plaintiff MISC Berhad filed this action against defendant Advanced Polymer Coatings, Inc. ("APC") alleging wrongdoing in connection with defendant's application of a protective coating to cargo vessels.

1

Plaintiff owns and operates chemical tankers.  In late 2006 or early 2007,[1] plaintiff entered into a shipbuilding contract with SLS Shipbuilding Co., Ltd. ("SLS") for the construction of several chemical tankers.  Regulations require that the tankers be coated in protective coating sufficient to protect the metal substrate from corrosive attacks caused by the chemicals transported in the vessels.  Defendant manufactures a product known as MarineLine, which is an approved protective coating.

In 2009, SLS contracted with defendant to coat the cargo tanks for a number of vessels, including the Bunga Bakawali ("Bakawali") and Bunga Balsam ("Balsam").  Pursuant to the contract, defendant agreed to apply two coats of MarineLine and bore responsibility for the heat curing of the coating.  SLS, on the other hand, agreed to provide dehumidifiers and certain types of heating equipment.  In addition, SLS agreed to grit blast the tanks to prepare them for coating and erect scaffolding to enable application.  It is undisputed that plaintiff is not a party to this contract.  Plaintiff notes, however, that defendant supplied coating products to plaintiff in the past.  Therefore, plaintiff knew of defendant's business.  Defendant marketed MarineLine to plaintiff as a superior product.  As a result, plaintiff instructed SLS to use MarineLine in the construction of the tankers.

Defendant commenced application of the MarineLine to the Bakawali on December 21, 2009.  Certain issues arose during the application process.  Specifically, it appears that an inspector for defendant noted that SLS provided improper heating equipment.  Other similar issues arose and the inspector provided corrective action reports, which were signed by SLS and

---

[1] Plaintiff offers an affidavit indicating that the parties entered into the contract in 2007.  Defendant, on the other hand, offers an unsigned copy of the contract which is dated November of 2006.

defendant, for each issue.  Defendant issued a completion certificate for the coating of the Bakawali on March 7, 2010, which provides as follows:

> It is certified that tanks listed below have been coated and cured with MarineLine coating as per APC specification. All tanks are ready for service.
>
> As of the date noted on this certificate all tanks listed below have had a final inspection attended by a MarineLine representative, Shipbuilding Representative, and Owner's Representative.
>
> All tanks listed below have passed the final inspection, have been sealed and responsibility of tank condition transfers to the Owner upon presentation of this certificate.

On February 1, 2010, defendant issued an "Insurance Guarantee" to SLS applicable to the Bakawali.  The Insurance Guarantee provide as follows:

> 2.01 Insurance Company will reimburse the Customer for the cost of replacement MarineLine Coating materials and their application, as may be necessary to repair Defective Areas in accordance with this Guarantee, providing that such repairs are actually carried out and that Advanced Polymer Coatings, Ltd.'s entire liability under this Guarantee shall be limited to the initial costs which are Replacement of MarineLine coating material, Inspection, Staging/Surface Preparation, Application, and Heat Curing.
>
> 2.03 For purposes of this Guarantee, deductible means that this guarantee only becomes effective if more than the deductible area per tank shows any break in the integrity of the coating material (including cracking) due to corrosive attack of the coating resulting in the steel substrate corroding to a severity greater than R-2.

The Insurance Guarantee is signed by defendant and is valid for a period of five years from the date of execution.  The "Insurance Guarantees" are not backed by a third-party insurance company.  Rather, the "insurance" is offered by defendant.  The parties excluded from coverage certain tanks that were the focus of the corrective action reports.

3

Coating began on the Balsam on February 22, 2010 and ended on March 27, 2010. Defendant issued an Insurance Guarantee to SLS on April 2, 2010. The terms of the guarantee are identical to those contained in the guarantee applicable to the Bakawali.

At some point, plaintiff reported to defendant that other tankers were experiencing delamination problems with MarineLine. On or about May 12, 2010, defendant, using test panels, conducted adhesion tests in order to address plaintiff's concerns. The test panels passed the adhesion tests, but further tests conducted on the "tank top of 6 port" on the Balsam revealed a failure rate of 40%. The following day, defendant issued a Certificate of Completion for the Balsam. Defendant also issued an Insurance Guarantee directly to plaintiff covering the Balsam. The terms and conditions of this guarantee appear identical to the guarantees previously issued to SLS. It is unclear whether SLS assigned its rights under the guarantee or whether defendant issued a new guarantee to plaintiff. Regardless, the effective date of the guarantee is May 13, 2010.

In June of 2010, the captain of the Bakawali reported coating delamination in a number of the cargo tanks. Additional testing was performed on both the Bakawali and the Balsam. As a result, discussions occurred between SLS, plaintiff, and defendant regarding the delamination issue. It appears that defendant offered to reapply and heat cure the MarineLine. Defendant indicated that SLS bore responsibility for reblasting the tanks and erecting the appropriate scaffolding. According to plaintiff, SLS would not participate in any remedial measures. Plaintiff notified SLS that it would not accept delivery of the Balsam, in part due to the delamination issues with MarineLine. In a letter sent by plaintiff to SLS, plaintiff indicated as follows:

4

> MISC discovered that three (3) out of the nine (9) tank coatings tested so far has [sic] shown signs of coating failure. We wish to impress it on you that it is your responsibility to ensure that tank coating is in order and in accordance with the Shipbuilding Contract prior to delivery. We note that SLS has not identified the root cause of the tank coating failure. It is your obligation to do the necessary test to ensure that right coating is applied prior to delivery of the Vessel.

Defendant informed plaintiff as follows:

> As mentioned previously, APC will do all that it can to help persuade SLS to do as MISC has asked. However, please allow me to remind you that as has been stated in previous meetings and emails, APC is not responsible for SLS's final decision.
>
> If MISC chooses to take delivery of this vessel prior to resolving this issue, APC has also informed all parties that we will not take "all responsibility" for the repairs. SLS carries the first 12 months warranty for any defects to the tank coating for this vessel. As we have stated previously, the issues that we are experiencing are due to failures with the equipment, which is the responsibility of the yard. APC has clearly stated that we will incur the costs for the material, application, and heat cure of any tanks determined to be in need of repair.

Ultimately, it appears from an SLS document that plaintiff accepted delivery of the Balsam without repairs to the cargo tanks. The parties continued to negotiate a resolution to the problem, but to no avail.

Plaintiff transported both the Bakawali and the Balsam to China to be recoated. A Chinese shipyard recoated the Bakawali between September and November of 2010. It appears that SLS assigned its rights under the Insurance Guarantee for the Bakawali to plaintiff on November 9, 2010. Plaintiff then demanded reimbursement from defendant in the amount of approximately $1.5 million. One year later, a Chinese shipyard recoated the Balsam. It appears that defendant provided MarineLine, inspection, and heat curing services at no charge. It does not appear that defendant actually applied the coating. According to defendant, it was not able to secure visas for its workers to enter China. In addition, defendant offered plaintiff a reduced price for MarineLine for the following years.

In June and December of 2010, the parties met to discuss a resolution of the dispute. At these meetings defendant informed plaintiff that it would "check with its insurance provider" regarding the issue. The Insurance Guarantees, however, were not underwritten by a third-party insurer. Defendant did not inform plaintiff of this fact. In February of 2011, defendant informed plaintiff that it would not accept responsibility for costs associated with the recoating of the Bakawali.

This lawsuit followed. The Second Amended Complaint contains five claims for relief. Count one is a claim for breach of express warranty based on the Insurance Guarantees and the Certificates of Completion. Count two alleges negligence. Counts three and four are claims for negligent misrepresentation. Count five is a claim for fraudulent misrepresentation based on statements made regarding the existence of insurance coverage.

The parties cross move for summary judgment and each opposes the other's motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56©, the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered

6

undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56©); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56©).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### ANALYSIS

1. Breach of warranty (count one)

In count one, plaintiff alleges that defendant breached the warranties contained in the Insurance Guarantees and the Certificates of Completion.  Defendant argues that the absence of privity between plaintiff and defendant precludes a breach of warranty claim.  Defendant also argues that even if such a claim could proceed, the statute of limitations bars the claim in this case.  Plaintiff disputes both of these assertions.

Upon review, the Court finds that plaintiff's breach of express warranty claims based on the Certificates of Completion fail because they are barred by the statute of limitations. Defendant issued a Certificate of Completion for the coating of the Bakawali on March 7, 2010, and one of for the Balsam on May 13, 2010.  The parties agree that the statute of limitations applicable to breach of express warranty claims is four years. *See*, O.R.C. § 1302.98.  This lawsuit was not filed within four years of May 13, 2010.  Plaintiff argues, however, that § 1302.98(B) extends the limitations period.  That section provides:

8

lack   A cause of action accrues when the breach occurs, regardless of the aggrieved party's
of knowledge of the breach. A breach of warranty occurs when tender of delivery is
made, except that where a warranty explicitly extends to future performance of the goods
and discovery of the breach must await the time of such performance, the cause of action
accrues when the breach is or should have been discovered.

O.R.C. § 1302.98(B).

Here, the Certificates of Completion contain no promise of future performance.  Rather, they provide that the tanks are "ready for service" and that they have "passed the final inspection" and "have been sealed."  Therefore, to the extent the Certificates of Completion could be construed to be warranties, § 1302.98(B) does not apply and any breach of warranty based thereon is barred by the four-year statute of limitations.

The Court further finds that defendant is entitled to summary judgment on the breach of warranty claim to the extent it is based on the Insurance Guarantees.  Plaintiff argues that defendant breached the introductory language of the Insurance Guarantees, which provides that defendant "guarantees the performance during the guarantee period of the MarineLine...." Plaintiff also relies on §2.01, which provides:

> 2.01 Insurance Company will reimburse the Customer for the cost of replacement MarineLine Coating materials and their application, as may be necessary to repair Defective Areas in accordance with this Guarantee, providing that such repairs are actually carried out and that Advanced Polymer Coatings, Ltd.'s entire liability under this Guarantee shall be limited to the initial costs which are Replacement of MarineLine coating material, Inspection, Staging/Surface Preparation, Application, and Heat Curing.

In response, defendant notes that plaintiff's argument wholly ignores § 2.03, which indicates as follows:

> 2.03 For purposes of this Guarantee, deductible means that this guarantee only becomes effective if more than the deductible area per tank shows any break in the integrity of the coating material (including cracking) due to corrosive attack of the coating resulting in the steel substrate corroding to a severity greater than R-2.

9

The Court rejects plaintiff's argument that the language in 2.03 is irrelevant to plaintiff's claim. Plaintiff ignores an important phrase in the introductory language on which it relies. Namely, the words "Subject to the following terms, conditions, and limitations" appears before the language cited by plaintiff. Thus, § 2.03 is one of the "terms, conditions, and limitations" applicable to plaintiff's guarantee of the MarineLine product. Thus, as clearly stated in §2.03, the "guarantee only becomes effective" upon the occurrence of an event, *i.e.*, when "the deductible area per tank shows any break in the integrity of the coating material (including cracking) due to corrosive attack of the coating resulting in the steel substrate corroding to a severity greater than R-2." According to defendant, testing shows that the MarineLine delaminated as a result of issues with SLS's heating equipment. The test strips showed carbamation formations on the surface of the base coat of MarineLine. Plaintiff has presented no evidence regarding the cause of the delamination or refuting defendant's proffered explanation. Because there is no evidence in the record from which a jury could determine that the tanks showed a sufficient area of a "break in the integrity" of the MarineLine due to corrosive attack, summary judgment in favor of defendant is warranted with respect to count one.[2]

2. Negligence (count two)

In count two, plaintiff alleges that defendant is liable for negligence as a result of its failure to use reasonable care in designing and applying MarineLine. According to plaintiff, MarineLine was not reasonably safe for its intended use. Plaintiff moves for summary judgment on the ground that circumstantial evidence exists to show that defendant breached the duty it

---

[2] Because summary judgment is warranted on these grounds, the Court need not reach the parties' alternative arguments.

owed to defendant in this regard. In response, defendant argues that the economic loss doctrine bars plaintiff's negligence claim. In addition, defendant claims that plaintiff offers no evidence supporting an argument that defendant breached any duty of care. Rather, the only evidence consists of defendant's tests, which show that SLS's failure to maintain proper environmental controls caused the delamination.

Upon review, the Court finds that the economic loss doctrine bars plaintiff's negligence claim. In *Floor Craft v. Parma Community General Hospital Ass'n.*, 560 N.E.2d 206 (Ohio 1990), the Ohio Supreme Court held that "for actions sounding in negligence, 'the well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Floor Craft*, at 208 (*citing Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989). "In order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage." *Queen City Terminals, Inc. v. General American Transportation Co.*, 653 N.E.2d 661, syllabus ¶ 1 (Ohio 1995). Absent physical injury to person or property, indirect economic damages may only be recovered in contract. *Id*. at 667.

In *Chemtrol*, a dispute arose from the sale of a defective "arch dryer." Although the arch dryer was subsequently repaired, the initial defect caused plaintiff to incur substantial economic losses. Plaintiff filed a claim with its insurance carriers to recover for the losses, and the insurance companies brought a third-party complaint against the manufacturer of the arch-dryer alleging negligence, strict liability, breach of express and implied warranties, and breach of contract. In upholding the trial court's dismissal of the tort claims against the manufacturer, the

court held,

> In negligence, the law imposes upon the manufacturer of a product the duty of reasonable care. That duty protects the consumer from physical injury, whether to person or property. However, the law of negligence does not extend the manufacturer's duty so far as to protect the consumer's economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties. 'When the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfil the term of the bargain arises only from the contract.'

*Chemtrol*, 537 N.E.2d at 630-31.

In essence, the court limited recovery to the terms of the contract because there was no allegation that damage to persons or property occurred. Although plaintiff failed to provide adequate notice under the contract, rendering recovery under a breach of contract theory unavailable, the court noted that "the existence of a contract *remedy* is irrelevant to the determination of whether contract or tort law provides the appropriate set of rules for recovery of damages." *Id*. at n.8 (quotations omitted) (emphasis added).

An exception to the economic loss doctrine exists where a separate duty arises in tort law. *Haddon View Invest. Co. v. Coopers & Lybrand*, 436 N.E 2d 212 (Ohio 1982). In *Haddon View*, the court determined that an accountant owes a duty of care arising in tort to foreseeable third parties. In 2005, the Ohio Supreme Court analyzed whether a subcontractor owed a duty in tort to the project owner, where a contract existed only between the project owner and the general contractor. *Corporex Development & Construction Mmgt, Inc. v. Shook, Inc.*, 835 N.E.2d 701 (2005). The court distinguished *Haddon View* and held that no separate duty in tort arises between a project owner and a subcontractor. Because no separate duty exists, purely economic damages are not recoverable. The same holds true here. Defendant, a subcontractor, owes plaintiff, a project owner, no duty arising in tort. Although plaintiff argues that property damage

12

occurred to the MarineLine itself, this damage is not cognizable as "property damage."  *See*, O.R.C. §2307.71(d) (for purposes of products liability claims, "economic loss" means "direct, incidental, or consequential pecuniary loss, including, but not limited to, *damage to the product in question*...and nonphysical damage to property other than that product...").  *See also*, *HDM Flugservice GMBH v. Parker Hannafin Corp.,* 332 F.3d 1025, 1030 (6th Cir.2003).[3]  Because no cognizable tort duty arises in the circumstances of this case, and because plaintiff points to no injury to persons or "other property," summary judgment in favor of defendant is warranted.

   3.  Negligent misrepresentation (count three)

In count three, plaintiff alleges that defendant made negligent misrepresentations in connection with the sale of MarineLine.  Specifically, plaintiff alleges that defendant negligently misrepresented the quality of the product and, as a result, plaintiff "instructed SLS to use [defendant's] product...to coat the tankers."  (ECF 35 at ¶ 102).  Plaintiff further alleges that defendant negligently misrepresented that the tankers were ready for service when it issued the Certificates of Completion.  Defendant argues that the economic loss doctrine bars this claim.  In response, plaintiff disagrees and argues that the lack of privity between plaintiff and defendant prevents the application of the economic loss rule.

---

[3]  Although not presenting the argument in its own motion for summary judgment, defendant argues in its brief in opposition to plaintiff's motion that federal maritime law applies to the negligence claim.  In its reply brief, plaintiff disputes this contention.  The Court need not reach this issue in that the result is the same regardless of which law applies.  *See, East River Steamship Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 863-64 (1986)(no products liability claim lies in admiralty when a commercial party alleges injury only to the product itself resulting in purely economic loss).

13

Upon review, the Court finds that defendant is entitled to summary judgment with respect to the misrepresentations alleged in count three.  Although defendant argues that the economic loss doctrine bars the claims, the Court finds that it need not address this thorny issue in that the claim fails on its merits.

Under Ohio law, negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Hts.*, 534 N.E.2d 835, 838 (Ohio 1989).

Here, plaintiff alleges that defendant negligently misrepresented that MarineLine "was the right product for MISC and that it was significantly improved from prior APC products." (Yusoff Aff. ¶ 14).[4]  Plaintiff's claim fails for the simple reason that there is no evidence in the record indicating that this statement is false.  The only "evidence" plaintiff points to demonstrates that the coating delaminated.  Defendant, however, presents uncontested evidence that this occurred as a result of SLS's drying equipment not as a result of the efficacy of the product.  In fact, the evidence shows that even after the problems with delamination, plaintiff recoated the tankers with MarineLine and continued to purchase the product. (Denise Keehan Aff. ¶¶ 48, 49).  Because there is no evidence from which a jury could determine that the statement identified by plaintiff is false, plaintiff's claim fails as a matter of law.

Plaintiff also alleges in count three that the Certificates of Completion contain negligent

---

[4] Plaintiff also generally points to sales brochures, although no specific statement is identified.

14

misrepresentations. The certificates provide that the tanks have been coated and cured and are "ready for service." Defendant issued a Certificate of Completion for the coating of the Bakawali on March 7, 2010 and one of for the Balsam on May 13, 2010. According to plaintiff, it reasonably relied on these certificates by "agreeing to take possession of the tankers." The argument is rejected. Prior to the issuance of the March 7th certificate, an inspector issued four violation reports concerning the application of the MarineLine to the Bakawali. Those reports detailed the problems with the equipment SLS used in the drying process. There is no corrective action listed. Rather, defendant indicates that it will not accept responsibility for problems associated with the violations. All of the violation reports are signed by plaintiff. Thus, plaintiff had full knowledge of the issue prior to the issuance of the Certificate of Completion. As such, plaintiff could not have reasonably relied on the Certificate of Completion when it agreed to take possession of the Bakawali. With regard to the May 13th document, even stronger evidence exists negating any reasonable reliance on the part of plaintiff. Plaintiff itself sent a letter to SLS *after* receiving the Certificate of Completion, in which plaintiff indicates that it will not accept delivery of the Balsam in part because tests conducted on the tank coating showed signs of failure. Thus, defendant could not have reasonably relied on the May 13th Certificate of Completion in accepting delivery of the Balsam.

      Because there is no evidence of the falsity of the first statement identified by plaintiff, and because there is no evidence of reasonable reliance with regard to the Certificates of Completion, defendant is entitled to summary judgment on count three.

      4. Negligent misrepresentation/fraud based on insurance carrier (counts four and five)

      In counts four and five plaintiff alleges that defendant misrepresented the existence of a

15

third-party insurance company associated with the Insurance Guarantees.  Plaintiff also alleges that defendant made a number of false statements to plaintiff regarding the existence of an insurance carrier.  According to plaintiff, these statements were made either negligently or fraudulently.

Defendant argues that there are no tort damages separate and apart from the contract damages.  Defendant further argues that it never assured plaintiff that it would cover the damages incurred by plaintiff.  Rather, defendant explicitly indicated that it would not do so.  Therefore, any belief that defendant may have had regarding an insurer's willingness to cover the costs is not reasonable.  In response, plaintiff points out that at various points in time defendant indicated that it would "check with its insurer" or "discuss with management and insurance company."  According to plaintiff, these statements, together with the Insurance Guarantees, caused plaintiff to rely on the fact that the Insurance Guarantees were backed by a third party insurer.  In addition, plaintiff argues that defendant promised that the tank coating issues would be resolved to plaintiff's satisfaction.  In reliance on these representations, plaintiff delayed filing a lawsuit.

Upon review, the Court finds that plaintiff's negligent misrepresentation and fraud claims fail as a matter of law.  Assuming *arguendo* that the statements are false, plaintiff offers no evidence that it reasonably relied on the statements or suffered any detriment as a result thereof.  The Insurance Guarantees arose long after plaintiff entered into its contract with SLS and there is no evidence suggesting that plaintiff relied on the documents in instructing SLS to use MarineLine.  Plaintiff's only argument is that it relied to its detriment on statements that the guarantees were backed by a third-party insurer by delaying the filing of this lawsuit.  Plaintiff

16

fails, however, to point to any damages caused by the delay. To the extent plaintiff claims that the delay caused damages because plaintiff failed to timely filed certain claims, the argument is rejected. Whether or not an insurance company existed has no bearing on the decision to file a timely claim. Even if third party insurance existed, the insurance company stands in the shoes of the claimant. Thus, the insurance company would be able to assert a statute of limitations defense based on plaintiff's failure to timely file its claims. In short, any delay in the filing of a lawsuit could not have been caused by any reasonable reliance on the part of plaintiff.[5]

The Court need not reach defendant's alternative argument that plaintiff suffered no tort damages distinct from its contract damages. Although defendant notes that the Court previously indicated as such, the ruling applied to a previously filed complaint, in which plaintiff expressly alleged a breach of contract claim.

The Court further rejects plaintiff's misrepresentation claims arising as a result of defendant's alleged "promise" to resolve the dispute. The Court has reviewed all of the correspondence submitted by the parties and finds that plaintiff fails to present any evidence even arguably suggesting that defendant engaged in actionable misrepresentation. Defendant points to correspondence very clearly indicating that the parties continued to dispute any obligation on the part of defendant to cover costs associated with the recoating of the tankers. Even the documentation relied on by plaintiff indicates that the parties continued to dispute issue.[6] In light of this undisputed evidence, plaintiff cannot point to any false statement that

---

[5] For these same reasons, the Court rejects plaintiff's argument that the statute of limitations should be tolled.

[6] *See, e.g.*, Donald Keehan Dep. Ex. 13 ("Accordingly, if we do not receive within fourteen (14) days of this letter, your agreement to

would reasonably induce plaintiff to forgo filing a lawsuit.  As such defendant is entitled to summary judgment on counts four and five.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 39) is GRANTED and Plaintiff MISC Berhad's Motion for Summary Judgment (Doc. 44) is DENIED.

IT IS SO ORDERED.

                                               /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
Dated: 4/27/15                         United States District Judge

---

        pay to MISC the sum of US$3,663,966.82 together with interest thereon and your agreement to provide us with the guarantee certificate for Balsam in respect of the repairs, we have no option but to consider placing this matter· in the hands of an external legal counsel to·recover the same from you."); Donald Keehan Dep. Ex. 15 ("APC stated that they had  issues with  shipyard work  quality during coating application and that the shipyards had failed to fully follow APC's procedure. Therefore APC position is that the repair cost should be borne by SLS shipyard instead. APC also claim that they have gone beyond their responsibility by supplying paint and heat curing expertise during [the repairs]".)